

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 3, 2009**                                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MARTIN JUNIUS GULLEY, JR., | § | CASE NO. 07-33271-SGJ-13 |
| | § | |
| D E B T O R . | § | |

---

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JUDITH L. JARRATT, | § | CASE NO. 07-36011-SGJ-13 |
| | § | |
| D E B T O R . | § | |

### <u>MEMORANDUM OF OPINION AND ORDER ALLOWING PROOFS OF CLAIM</u>

#### I.  Introduction

Before the court are objections to proofs of claim filed in two unrelated Chapter 13 cases that involve similar facts and legal questions and have been argued together to the court.  All proofs of claim at issue were filed by the same entity:  eCast Settlement Corporation ("eCast").  The court rules in these

1

contested matters with this consolidated Memorandum of Opinion and Order. Upon the evidence and arguments presented, the court makes the following findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate, a finding of fact shall be construed as a conclusion of law and *vice versa*.

## II. Jurisdiction

The court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157. These are core proceedings as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## III. Issues

A. How should the dismissal, and then reinstatement, of a chapter 13 case (*i.e.,* the vacatur of the dismissal order) impact the proof of claim bar date, when the bar date falls during the period after dismissal and prior to reinstatement, and the court does not otherwise specifically extend the bar date? Can an "equitable tolling" type concept be applied—in spite of the strict parameters of Bankruptcy Rules 3002(c) and 9006(b)(3)? Or, does a bankruptcy court otherwise have the power to recalculate the Rule 3002(c) deadline in the reactivated case?

B. Wholly separate from the timeliness issue, how does a creditor's failure to initially attach documentation sufficient to substantiate its proof of claim impact the claims allowance process?

## IV. Facts

### A. *Gulley Case.*

Martin Junius Gulley, Jr. ("Mr. Gulley") filed a voluntary chapter 13 case on July 6, 2007. The section 341 first meeting of creditors was set for (and held and concluded on) August 16, 2007, and the proof of claim bar date in Mr. Gulley's bankruptcy case was set and noticed as November 14, 2007. [Doc. Nos. 5 & 19.] *See* Bankruptcy Rule 3002(c). However, after the section 341 meeting was concluded, and before the bar date occurred, Mr. Gulley's case was dismissed, on September 21, 2007, for failure to cooperate with the Chapter 13 Trustee. Mr. Gulley promptly moved for vacation of the dismissal order and reinstatement of his case on September 27, 2007, and obtained a hearing on November 8, 2007. At such hearing, the motion to vacate dismissal and reinstate case was granted, and an order to that effect was entered November 19, 2007—which, notably, was five days **after** the proof of claim bar date.

eCast filed three proofs of claim against Mr. Gulley:

1. Proof of Claim #12-1,[1] filed September 17, 2007, by eCast, as assignee of GE Money Bank/MERVYN'S, in the unsecured amount of $1,106.56, relating to alleged unpaid prepetition

---

[1] References are to claims numbers used in the Bankruptcy Clerk's Official Claims Register. The court takes judicial notice of this Claims Register.

charges on Mr. Gulley's Mervyn's credit card number ************1260. [Exh. 2.] Proof of Claim #12-1 only had a one-page attachment affixed thereto, entitled "Account Summary," simply reflecting the account creditor who purportedly assigned the claim to eCast, the last four digits of the account on which Mr. Gulley was liable, account type as "credit card," and the account balance.

2. Proof of Claim #13-1, filed January 18, 2008, by eCast, as assignee of GE Money Bank/Wal-Mart, in the unsecured amount of $719.46, relating to alleged unpaid prepetition charges on Mr. Gulley's Wal-Mart credit card number ************5803. [Exh. 5.] Proof of Claim #13-1 only had a one-page attachment affixed thereto, entitled "Account Summary," again reflecting the account creditor who purportedly assigned the claim to eCast, the last four digits of the account on which Mr. Gulley was liable, account type as "credit card," and the account balance.

3. Proof of Claim #14-1, filed January 18, 2008, by eCast, as assignee of GE Money Bank/DILLARD'S, in the unsecured amount of $710.13, relating to alleged unpaid prepetition charges on Mr. Gulley's Dillard's credit card number ************4496. [Exh. 8.] Proof of Claim #14-1 only had a one-page attachment affixed thereto, entitled "Account Summary," again simply reflecting the account creditor who purportedly assigned the claim to eCast, the last four digits of the account on which Mr. Gulley was liable,

4

account type as "credit card," and the account balance.

Mr. Gulley objected to these proofs of claim ("Gulley's Proof of Claim Objection")[2], at Docket Entry #51, seeking disallowance of all three proofs of claim, on the basis that eCast did not attach "documents sufficient to establish a prima facie claim" and "Debtor requests this claim be fully itemized by creditor by filing an amended proof of claim."  eCast filed Amended Proof of Claim #12-2, Amended Proof of Claim #13-2, and Amended Proof of Claim #14-2, each on August 13, 2008, in response to Gulley's Proof of Claim Objection, this time attaching multi-page account statements to support eCast's three claims, as well as various "Bills of Sale" between certain sellers of accounts and eCast.

Mr. Gulley has also objected to Proofs of Claim # 13-1 and #14-1 on the basis that the claims were late-filed (*i.e.,* after the November 14, 2007 proof of claim bar date).

### B.  Jarrett Case.

Judith L. Jarrett ("Ms. Jarrett") filed a voluntary chapter 13 case on December 3, 2007.

eCast filed one proof of claim against Ms. Jarrett:  Proof of Claim #14-1, filed March 6, 2008, by eCast, as assignee of Household Finance Corporation/Beneficial, in the unsecured amount

---

[2] The Gulley Proof of Claim Objection is actually an omnibus objection, containing objections to many proofs of claim filed in the Gulley case.

of $14,206.81, relating to alleged unpaid prepetition charges on Ms. Jarrett's loan account number **********2368. [Exh. 11.] Proof of Claim #14-1 only had a one-page attachment affixed to it, entitled "Recovery Management System," simply reflecting, among other information, the name Bart L. Jarrett, the last four digits of the account on which Ms. Jarrett was liable, and the account balance.

Ms. Jarrett objected to this proof of claim ("Jarrett's Proof of Claim Objection")[3] at Docket Entry # 28, seeking disallowance of the proof of claim, on the basis that eCast did not attach documentation sufficient to establish a prima facie claim. eCast filed Amended Proof of Claim #14-2, on August 26, 2008, in response to Jarrett's Proof of Claim Objection, this time attaching a multi-page declaration and affidavit of an employee of HSBC f/k/a Household Finance Corporation/Beneficial, with an attached promissory note signed by Ms. Jarrett and a Bart L. Jarratt, along with an account history, and an "Assignment of Accounts" document between certain sellers of accounts and eCast.

## V. Conclusions of Law

### A. Issue Unique to Gulley Case: The "Untimeliness" of eCast's Proofs of Claim ## 13 and 14.

As earlier described, there is one issue unique to the

---

[3] The Jarrett Proof of Claim Objection is actually an omnibus objection, containing objections to several proofs of claim filed in the Jarrett case.

Gulley case—the timeliness issue. As earlier stated, Mr. Gulley filed his Chapter 13 case on July 6, 2007. The proof of claim bar date in his bankruptcy case was set and noticed for November 14, 2007. But after the section 341 meeting was held and concluded (on August 16, 2007), and before the bar date expired, Mr. Gulley's case was dismissed, on September 21, 2007, for failure to cooperate with the Chapter 13 Trustee.[4] Mr. Gulley then moved for vacatur of the dismissal order on September 27, 2007, obtaining a hearing thereafter,[5] at which the motion to vacate dismissal (which was unopposed) was granted, and an order to that effect was entered November 19, 2007—which was five days **after** the proof of claim bar date. The order was silent regarding whether any case deadlines were affected.[6] Thus, how did the dismissal, and then reinstatement, of the chapter 13 case (*i.e.,* the vacatur of the dismissal order) impact the proof of

---

[4] The notice of dismissal was served on September 23, 2007, by BNC on Dillards-GEMB, Mervyn's-GEMB, and Walmart-GEMB by regular mail, and on eCast electronically.

[5] The certificates of service on the motion to reinstate and the related notice of hearing represent that all persons on the attached mailing matrix were served. However, no mailing matrix was attached. The court's records reflect that these documents were not served electronically on eCast, or on Dillard's-GEMB, Mervyn's-GEMB, and Walmart-GEMB. Thus, there is no credible evidence of service on eCast of the motion to vacate the dismissal order.

[6] BNC served this order on November 21, 2007, by U.S. Mail, to eCast, Dillard's-GEMB, Mervyn's-GEMB, and Walmart-GEMB.

7

claim bar date, when the court did not otherwise specifically extend or reset the bar date?  In other words, should some sort of equitable tolling (or, a pragmatic "recalculation" of the bar date—assuming that this may be a different concept in the law) be applied as to eCast?

Mr. Gulley wants to hold eCast to the November 14, 2007 proof of claim deadline, despite the fact that the case was dismissed at the time of its running.  eCast wishes this court to toll the proof of claim deadline, for some reasonable period of time, arguing that it is inequitable to hold eCast to a proof of claim bar date that passed while Mr. Gulley's case was dismissed.

### 1. The Restrictive Nature of Bankruptcy Rules 3002(c) and 9006(b)(3).

Bankruptcy Rule 3002(c) is the starting place for this timing conundrum, and it is no help to eCast.  Rule 3002(c) provides that the time for filing proofs of claim in a Chapter 7, 12, or 13 case shall be "not later than 90 days after the first date set for the meeting of creditors called under § 341(a)." Rule 3002(c) provides for only limited circumstances in which the time for filing proofs of claim in Chapter 13 may be enlarged. Specifically, six circumstances are given where the time can be enlarged—none of which include a situation where the case has been dismissed and then reinstated (with the deadline for filing proofs of claim having run in the interim).

Also relevant is Bankruptcy Rule 9006(b)(3), which limits

8

enlargement of the time for filing a proof of claim in a Chapter
7, 12, or 13 case "only to the extent and under the conditions
stated" in Rule 3002(c). Rule 9006(b)(3) likewise restricts the
enlargement of time under certain other Bankruptcy Rules: (a)
Rule 1006(b)(2) (which sets forth the maximum amount of time for
paying the bankruptcy filing fee in installments); (b) Rule
1017(e) (which sets forth the deadline for filing a motion to
dismiss for abuse under section 707(b) or (c)); (c) Rule 4003(b)
(which sets forth the deadline for filing an objection to
exemptions); (d) Rule 4004(a) (which sets forth the deadline for
filing a section 727(a) action); (e) Rule 4007(c) (which sets
forth the deadline for filing a section 523 action); (f) Rule
4008(a) (which sets forth the deadline for filing reaffirmation
agreements); (g) Rule 8002 (which sets forth the deadline for
filing a notice of appeal); and (h) Rule 9033 (which sets forth
the deadline for filing written objections to the judge's
proposed findings of fact and conclusions of law in non-core
proceedings).

In summary, Bankruptcy Rule 9006(b)(3) appears to
unambiguously preclude any equitable discretion on the part of a
bankruptcy court to extend or toll these deadlines set forth in
these nine different Bankruptcy Rules. Indeed, this court has
previously opined, in the context of a section 523 action, that
it has no authority to grant an equitable extension of the

deadline for filing a section 523 action—where the request is made after the deadline in Rule 4007(c) has passed—because of the limitation in Rule 9006(b)(3), "absent extenuating circumstances such as those articulated in *Coston* and *Dunlap*." *The Cadle Company v. Riggert (In re Riggert),* 2009 WL 62254, *8 (Bankr. N.D. Tex. 2009). So this court now turns to *Coston* and *Dunlap* to elaborate on the type of "extenuating circumstances" that might permit the altering of the hard deadlines referred to in Rule 9006. Distilled to their essence, *Coston* and *Dunlap* stand for the proposition that bankruptcy courts have the power to ***nullify original case deadlines*[7] *and recalculate them*** when there has been the extenuating circumstance of ***disruption of a case*** (*e.g.,* when there has been a stay in or a dismissal of a case), but bankruptcy courts do not have the power to extend or toll deadlines generally on any equitable grounds.

    2.    **The *Coston* Rule.**

    In *Coston v. Bank of Malvern*, 987 F.2d 1096 (5th Cir. 1992), the Fifth Circuit approved the nullification and resetting by the bankruptcy court of the deadlines under Rules 4004 and 4007,

---

    [7] As will be explained below, the Fifth Circuit was addressing the deadline for filing section 523 actions in both *Coston* and *Dunlap*, pursuant to Bankruptcy Rule 4007(c) and 9006(b)(3), but this court believes that the reasoning of *Coston* and *Dunlap* should be applied in the context of likely any of the nine hard deadlines referenced in Bankruptcy Rule 9006(b)(3).

where a Chapter 7 case had been stayed pursuant to Rule 1014(b).[8]

The debtors in *Coston* maintained residences in both Arkansas and Texas. On January 25, 1989, two of the debtors' creditors filed an involuntary petition against the debtors in the United States Bankruptcy Court for the Western District of Arkansas. The next day, the debtors filed a voluntary petition in the United States Bankruptcy Court for the Eastern District of Texas. The case in Texas was then stayed, pending a ruling by the court in Arkansas, as to proper venue. *Id.* at 1098. But before the Texas case was stayed, March 1, 1989 was set as the date for the first meeting of creditors in the Texas case. Pursuant to the stay, the Texas court cancelled the creditors' meeting and "in essence put the bankruptcy proceeding in Texas on hold pending disposition by the court in Arkansas of a motion to determine proper venue." *Id.*

On May 10, 1989, the Arkansas court determined that Texas was the proper venue and dismissed the involuntary case, and the Texas case was revived. The Texas court promptly set a new date, July 10, 1989, for the first meeting of creditors and new deadlines for filing complaints objecting to discharge and dischargeability. Thereafter, the debtors complained that an objection to discharge filed by a certain creditor was untimely

---

[8] The Fifth Circuit never uses the legal term of art "tolling."

11

because it was not filed within sixty days following the
originally scheduled section 341 meeting (*i.e.,* was not filed
within 60 days of March 1, 1989), even though the originally
scheduled section 341 meeting had been cancelled by the Texas
bankruptcy court, under the Rule 1014(b) notice of stay from the
Arkansas bankruptcy court. *Coston*, 987 F.2d at 1098. The
bankruptcy court rejected this argument. The district court
affirmed the bankruptcy court's ruling.

The Fifth Circuit noted that the debtors cited "no less than
twenty-five cases" to the Fifth Circuit "informing [the court] of
the rigidity of" the phrase "first date set" in Rule 4007(c),
which provides that "'[a] complaint to determine dischargeability
of any debt pursuant to § 523(c) shall be filed no later than 60
days following the ***first date set*** for the meeting of creditors.'"
*Coston*, 987 F.2d at 1099 (emphasis in the original). But the
Fifth Circuit noted that "not one of those cases–or for that
matter any of the cases cited to the district court–deal with a
situation involving a stay under Rule 1014(b)." *Id*. The Fifth
Circuit agreed with the creditor that, in reliance on Rule
1014(b)'s stay of the case in Texas, the creditor did not have to
file an objection to discharge in the Texas court until the
Arkansas case was terminated and the Rule 1014(b) stay was ended.
*Id*. The Fifth Circuit concluded that, in the situation of a case
stayed pursuant to Rule 1014(b), "the new date set by the court

is the 'first date' under Rule 4007(c); it is not merely a rescheduling of the old pre-stay date." *Id.*

The Fifth Circuit also recognized that its ruling "[f]acially . . . may appear to contradict the wording of Rule 4007(c)."[9] *Coston*, 987 F.2d at 1099. But in light of Rule 1014(b), no other result is sensible or possible.

> The Bank cannot be penalized because it did not comply with a filing deadline of a court whose proceedings had been stayed. To suggest that even though the court's proceedings in the [debtors'] case had been stayed under Rule 1014(b), its filing deadline under Rule 4007(c) continued to run is ludicrous. We reject this procedural contention by the [debtors].

*Coston*, 987 F.2d at 1099.

### 3. The *Dunlap* Rule.

Further, the Fifth Circuit has relied upon *Coston* in holding that the deadline in Rule 4007 for filing dischargeability complaints may be recalculated when the bar date passes while a case is dismissed. *State Bank & Trust, N.A. v. Dunlap (In re*

---

[9]*Cf. Neeley v. Murchison (In re Murchison)*, 815 F.2d 345 (5th Cir. 1987) (wherein the Fifth Circuit declined to find that the dischargeability bar date had been suspended by the Clerk of Court's failure to provide notice of the dischargeability bar date where the party had actual notice of the bankruptcy proceedings and notice of the date of the initial meeting of creditors such that he had opportunity to protect his rights and the purpose of the notice provision was met). "Rule 4007(c) plainly requires that a creditor file his Section 523(c) complaint, or his motion for extension, within 60 days from the date set for the initial creditors' meeting." *Neeley v. Murchison*, 815 F.2d at 347.

13

*Dunlap)*, 217 F.3d 311 (5th Cir. 2000).

The debtor in *Dunlap* filed his Chapter 11 petition on July 3, 1997.  The first meeting of creditors was scheduled for August 11, 1997, making the deadline to file a nondischargeability complaint October 10, 1997 (sixty days after August 11, 1997).  At the debtor's request, the first meeting of creditors was moved to September 5, 1997, but the October 10th bar date was not changed.  *Id*. at 312-13.  The debtor failed to appear at the September 5th meeting of creditors.  Instead, his attorney appeared and announced that the debtor would file a motion to dismiss the case.  Thereafter, the debtor's counsel presented a motion to dismiss to the court, and the case was dismissed *ex parte* on September 15, 1997.  *Id*. at 313.  Two creditors promptly moved to vacate the dismissal order as a violation of their due process rights.  On December 2, 1997, the bankruptcy court determined that it had erred in dismissing the case without providing interested parties an opportunity to be heard, and directed the debtor to reset the motion to dismiss for hearing.  An order vacating dismissal order was entered on December 15, 1997.  *Id*.  During the three-month period when the case was dismissed, the October 10th deadline to object to dischargeability passed.

The debtor never reset his motion to dismiss.  In light of the debtor's failure to prosecute (or re-prosecute) his motion to

14

dismiss, the Chapter 7 trustee decided to move forward with the case and obtained a new date for the first meeting of creditors, February 6, 1998, and a new bar date for objections to dischargeability, April 7, 1998. The debtor independently rescheduled the first meeting of creditors to January 30, 1998, and issued a notice entitled "Notice of Continued Section 341 Meeting." *In re Dunlap*, 217 F.2d at 313.

One creditor filed a dischargeability action on March 31, 1998, and another filed a dischargeability action on April 2, 1998. The debtor moved to dismiss each, asserting that they were time-barred. The bankruptcy court concluded that the sixty-day period for bringing dischargeability actions should be calculated from January 30, 1998. By that calculation, the objection to dischargeability deadline was March 31, 1997, meaning one action was filed timely and the other was not. In *dicta* in his order, the bankruptcy court noted his belief that the filing deadline should be tolled for the period of time in which the bankruptcy court considered the dismissal motion, such that the clock would not have started again until the January 30th meeting of creditors. *In re Dunlap*, 217 F.2d at 313-14.

Appeals ensued. Like in *Coston*, the debtor in *Dunlap* argued that the "date first set" language of Rule 4007 must refer to August 11, 1997, the **original** setting for the meeting of creditors. The debtor, in short, insisted that the bar date for

dischargeability actions was October 10, 1997, *a date falling within the period in which the case was dismissed*.  *In re Dunlap*, 217 F.2d at 315.  The debtor argued that "the creditors could have taken steps to protect themselves by filing motions and complaints with the court, despite the dismissal and the fact that the debtor had never appeared for examination by the creditors at the section 341 meeting."  *Id*.

The Fifth Circuit, first, acknowledged that Rules 4007(c) and 9006(b)(3) must be read in conjunction and, together, form a "strict time limitation [] upon creditors who wish to object to a debt's dischargeability."  *In re Dunlap*, 217 F.2d at 315.  But the Fifth Circuit rejected the debtor's reasoning, noting that while the debtor's approach offered "certainty of a fixed filing period of 60 days, it would precipitate a barrage of prophylactic filings in all cases dismissed before the complaint deadline, and would thus burden both creditors and the courts with unnecessary expense and effort."  *Id*.  Instead, the Fifth Circuit looked to its own reasoning in *Coston*, coming to the conclusion that "rescheduling of the section 341 meeting and recalculating the bar date is far more compelling when a bankruptcy case has been dismissed than merely stayed.  Resetting the meeting of creditors and the complaint filing deadline preserves the integrity of the 60-day period and allows creditors sufficient unequivocal information to calculate the bar date with certainty."  *Id*. at

16

316.

Note that the Fifth Circuit **rejected** application of a pure tolling rule to Rule 4007(c), stating that it failed to comport with the purpose of the rule to establish a fixed, relatively short limitation period for creditors to act. *In re Dunlap*, 217 F.2d at 317.   The Fifth Circuit further noted that the "amorphous nature of an equitable tolling rule" could result in great confusion concerning the date that bar dates should recommence. On balance, the Fifth Circuit reasoned that "a bright-line rule based on the new first meeting of creditors eliminates creditor guess work, strictly adheres to the language of Rule 4007(c), and does not conflict with precedent of this Court."   *Id*.

**4.    Due Process Considerations, and the Holdings of *Coston* and *Dunlap*, Require Recalculation of the Proof of Claim Bar Date in the Gulley Case.**

Mr. Gulley wishes this court to rule that the deadline to file proofs of claim continued to run and, in fact, expired while his case was dismissed.   This argument is strikingly similar to the arguments of the debtors in *Dunlap* and *Coston.*   This court believes that the argument stands both reason and due process on their heads, by essentially suggesting that eCast should have filed a proof of claim in Mr. Gulley's dismissed case, on the off chance that Mr. Gulley's case might be revived after the proof of deadline passed.   Like the creditor in *Coston* who relied on the order staying the Texas proceeding, eCast had good reason to rely

17

on this court's order dismissing Mr. Gulley's case. eCast should not be penalized because it failed to file a proof of claim in a dismissed case. To suggest otherwise strains credulity.

However, the difficulty in this case lies in the fact that the Fifth Circuit in *Dunlap* rejected the availability of **tolling principles generally** to the Rule 4007(c) deadline. Instead, the court embraced the notion of **recalculating** case deadlines using the "bright-line rule" of deeming the **newly set** first meeting of creditors date as the "first date set" for the section 341 first meeting of creditors. In Gulley, the first meeting of creditors was not newly set after reinstatement of the case because the first meeting of creditors had been held and concluded prior to dismissal of the case—thus it did not need to be re-held.

The nuance of there being no newly set section 341 first meeting of creditors in Gulley, with no new case deadlines thus triggered and noticed, makes this case awkward such that it does not neatly fit within the *Coston* and *Dunlap* Rules. Nevertheless, this court holds that **where a case is disrupted**, such as through a stay or dismissal, and a proof of claim deadline runs prior to the reinstatement of the case, a court has the power to nullify the original proof of claim deadline and recalculate it. To hold otherwise offends notions of due process, but also invites mischief or the barrage of prophylactic filings foreseen by the Fifth Circuit in *Dunlap*. This court can envision scenarios in

18

which crafty debtors may allow their cases to be dismissed on technical grounds (like failure to file paperwork), allow the proof of claim deadline to pass, and then seek to reinstate the case and hold a creditor to the deadline that ran while the case was a non-case.

This holding still begs the question of what recalculation formula is appropriate here, or in other cases, where there (again) was no newly set section 341 meeting to use as the recalculation basis. In the Gulley case, the dismissal order was entered 54 days (*i.e.,* on September 21, 2007) before the proof of claim deadline (*i.e.,* November 14, 2007). There was a 59-day period when there was technically no case (*i.e.,* from September 21, 2007 to November 19, 2007). eCast filed its two allegedly untimely claims exactly 60 days after reinstatement (*i.e.,* on January 18, 2008). Had this court been asked, at or shortly after the time of reinstatement, to reschedule a proof of claim bar date in the Gulley case, the court would have felt compelled to do so, in light of the bar date expiring during the dismissal-phase of the case. The court envisions that it might have scheduled the new bar date slightly sooner than January 18, 2008. The goal would have been to give creditors the full 90 days contemplated by Rule 3002(c) to get a proof of claim on file—recognizing that, here, 50+ of the 90 days contemplated elapsed during the phase when the case was dismissed (and, so,

19

likely should not be counted).  But, of course, here, no one asked the court to reschedule a bar date.  On balance, the court does not believe eCast should be penalized for this.

The bar date is, therefore, recalculated in this case to January 18, 2008—the date that was 60 days after reinstatement of the case and the date that eCast filed its Proofs of Claim Nos. 13 and 14.[10]  Thus, this court deems eCast's Proofs of Claim Nos. 13 and 14 timely filed.[11]  The court finds this date reasonably close, if not the same, as what the court would have likely set as a new bar date in the Gulley case, had the issue been brought before the court at the time of reinstatement of the case.[12]

---

[10] The court notes that no non-governmental creditor in the Gulley case, other than eCast, filed a proof of claim after the original bar date.  Moreover, all governmental entities appear to have complied with the governmental-entity bar date in the case.

[11] The court notes, anecdotally, that the eCast proofs of claim were filed over three months before Mr. Gulley obtained confirmation of his plan in his case (which occurred April 24, 2008).  *See* Doc. No. 49. Thus, to the extent it is relevant, the timing of eCast's filing of its proofs of claim does not appear to have caused an inconvenience to the Debtor in its plan formulation or implementation.

[12] The court does not opine on what might or should occur in cases where a debtor's case is dismissed and reinstated prior to the expiry of the proof of claim bar date, or where the dismissal period is not so long as the dismissal period was in this case (again, the dismissal period was 59 days in this case).  Creditors should continue to assume that such bar dates are firm and enforceable, notwithstanding this limited ruling.

**B. Issue Common to Both the Gulley and Jarrett Cases: The Claim Documentation Issue.**

As herein described, all of the proofs of claim of eCast in both the Gulley and the Jarrett cases were objected to on the basis that eCast did not attach sufficient documentation to establish a prima facie claim (and, with regard to the Gulley claims, the Debtor further requested that these claims "be fully itemized by creditor by filing an amended proof of claim"). As earlier mentioned, eCast promptly amended each of its proofs of claim after the Debtors' objections thereto were filed (and prior to the contested hearing in these matters), attaching more fulsome documentation.

Certain case law from this district has already intelligently and fully explored the impact on the claims-allowance process of a creditor's failure to attach supporting documentation to its proof claim. This court adopts this case law and summarizes it below, showing how the claims allowance or disallowance process should unfold:

> 1. A failure to fully comply with Bankruptcy Rule 3001, by failing to attach supporting documentation to a proof of claim, will mean that the proof of claim lacks prima facie validity, but will not necessarily mean that it will be disallowed.[13] Without an

---

[13] Bankruptcy Rule 3001 requires that a proof of claim conform substantially to the Official Bankruptcy Form (*i.e.*, Form B10), be executed by the creditor or an authorized agent of the creditor, and, when a proof of claim is based upon a writing, the original or a duplicate of the writing shall be filed with the

objection, the claim will be allowed.  11 U.S.C. § 502(a).  Moreover, a debtor generally acts in good faith if he objects to a claim that lacks required documentation.

2.  If a debtor objects to a proof of claim for failure to attach supporting documentation, and the creditor fails to supply it thereafter, the court would expect the debtor to request that the claim be disallowed.  In such event, the creditor would have the burden of proof to support its claim.

3.  If the creditor supplies supporting documentation in response to the debtor's objection before the hearing on the objection, the court would expect the debtor to withdraw his claim objection.

4.  If the creditor does not produce the documentation until the hearing, the creditor will have the burden of proof at the hearing to establish its claim by a preponderance of the evidence.

5.  In the case of a credit card creditor,

---

proof of claim.  *See* Bankruptcy Rule 3001(a), (b) and (c).  A claim based on a credit card agreement, which is required to be in writing, pursuant to the Truth-in-Lending Act, is "based on a writing."  *See In re Armstrong,* 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005) (a joint opinion of then-Chief Judge S. Felsenthal, Judge B. Houser, and Judge H. Hale) (and cases cited therein).  However, if the writing has been lost or destroyed, a statement of those circumstances shall be filed with the claim.  *See* Bankruptcy Rule 3001(c).  Official Bankruptcy Form B10 reiterates these concepts by directing the filer to "attach copies of supporting documents such as promissory notes, purchase orders, invoices . . ..  If the documents are not available, explain.  If the documents are voluminous, attach a summary."  Finally, Bankruptcy Rule 3001(f) provides that "a claim executed and filed in accordance with Rule 3001 shall constitute prima facie evidence of the validity and amount of the claim."  *See also discussions* in *In re White,* 2008 WL 269897, at *3 (Bankr. N.D. Tex. Jan. 29, 2008) (Judge R. Jones) (citing *In re Armstrong,* 320 B.R. at 103-104).

the following documentation would need to be attached to its proof of claim for there to be prima facie validity:  a summary statement attached to the proof of claim including the name and account number of the debtor, the amount of the debt, interest rate, and a breakdown of the interest charges, finance charges, and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined.

6.  In the circumstance of a transferred claim, the transferee has an obligation under Bankruptcy Rule 3001 to document its ownership of the claim by attaching a signed copy of the assignment (even if a blanket assignment) and sufficient information to identify the original credit card account. In the event of a material discrepancy between the amount scheduled and the claim filed by the assignee of the credit card issuer, further documents or an evidentiary hearing may be required.

*In re White,* 2008 WL 269897, at *6 (Bankr. N.D. Tex. Jan. 29, 2008) (Judge R. Jones); *In re Armstrong,* 320 B.R. at 107-108.

Judges Rhoades has provided helpful analysis of some of these same issues in *In re Leverett*, 378 B.R. 793 (Bankr. E.D. Tex. 2007)—particularly with regard to the burden shifting issues in the context of a claim objection.  This court agrees with her analysis that: (a) a claimant who has complied with Bankruptcy Rule 3001 and Official Form B-10 may rest on its proof of claim (it having an independent evidentiary effect such as a verified complaint) and refrain from presenting any additional evidence at the hearing on an objection; (b) the claimant will prevail unless the objecting party produces evidence of equal or greater

probative force to that of the proof of claim to refute some aspect of the proof of claim; (c) if the objector does come forward with such probative evidence, then whichever party has the burden of proof respecting assertion of the claim outside of bankruptcy bears the burden in the contested matter from that point forward. *Id.* at 799.

Applying this analysis to the case at bar, as noted above, eCast, although originally just attaching claim summaries, filed amended proofs of claim prior to the hearing, this time attaching: (a) in the case of the Gulley proofs of claim (i) several account statements in the months leading up to the bankruptcy case, including the statements issued closest to the Petition Date, with each showing the credit card issuer's name, Mr. Gulley's name and address, the account number (partially blackened out to protect the Debtor's private information), and the amount of debt with interest rate and a break down of charges; and (ii) a Bill of Sale document dated June 24, 2002 by and between Monogram Credit Card Bank of Georgia, Montgomery Ward Credit Corporation, GE Capital Financial Inc., General Electric Capital Corporation (each, as Seller) and eCast as Buyer; and (b) in the case of the Jarrett proof of claim, a Declaration and Affidavit of HCBC (f/k/a Household Finance Corporation/Bene-ficial) in which an employee swears as to the accuracy of certain documents attached thereto (including a promissory note executed

24

by Ms. Jarrett and a Bart Jarrett, and account history showing the Jarretts' payment history) and swears that on May 21, 2004, Ms. Jarrett and Bart Jarrett obtained a personal loan, and that the loan was sold to ECast (pursuant to an assignment agreement attached) and the exact amount currently owed is sworn to (with interest and other charges shown).  Also, with respect to the Gulley proofs of claims, eCast filed supplemental "Affidavits Supporting Claim" for each amended proof of claim, a week prior to the hearing (Doc. Nos. 62, 63, and 64), sworn to by a Heidi Brown, an employee of GE Consumer Finance, who purports to have knowledge about each of the claims filed by eCast, and swears to the amounts due in respect of each of Mr. Gulley's credit cards and swears that eCast bought the claims against Mr. Gulley pursuant to the Bills of Sale attached to the eCast Amended Proofs of Claim.

<u>Conclusion as to the Gulley Amended Proofs of Claim of eCast:</u>

The court concludes that, with its Amended Proofs of Claim and Affidavits filed in support of same prior to the claim-objection hearing, eCast provided sufficient documentation to constitute prima facie evidence of its claims.  The Amended Proofs of Claim had all the information necessary to make a prima facie showing as to credit card balances, and the Affidavits and Bills of Sale submitted provided sufficient information to document current ownership of the claims (*i.e.,* that eCast was

the current holder of the Mervyn's, Wal-Mart and Dillard's claims against Mr. Gulley).  A simple review of this information should have provided a sufficient link to allow Mr. Gulley to match the Amended Proofs of Claim with his Schedule F.  The court takes judicial notice that Mr. Gulley's Schedule F [*see* Docket Entry # 10] lists the following unsecured creditors (without dispute) that seem to bear some similarity to the eCast proofs of claim: (a)  "Gemb/mervyn's," Acct No. xxxxxxxx4871, amount $1,166;  (b) "Gemb/walmart," Acct No. xxxxxxxx0030, amount $754; (c) "Gemb/dillards," Acct No. xxxxxxxx0495, amount $4,745; (d) "Gemb/dillards," Acct No. xxxxxxxx3155, amount $745.  The court concludes that the eCast Amended Proofs of Claim and the these items in Mr. Gulley's Schedule F reflect the same obligations.

<u>Conclusion as to the Jarrett Amended Proof of Claim of eCast:</u>

The court concludes that, with the Amended Proof of Claim and Declaration/Affidavit filed in support of same prior to the claim-objection hearing, eCast provided sufficient documentation to constitute prima facie evidence of its claim against Ms. Jarrett.  The Amended Proof of Claim had all the information necessary to make a prima facie showing as to the personal loan balance, and the Affidavit and Assignment of Account submitted provided sufficient information to document current ownership of the claim (*i.e.,* that eCast was the current holder of the Beneficial/Household Finance claim against Ms. Jarrett).  A

26

simple review of this information should have provided a sufficient link to allow Ms. Jarrett to match the Amended Proof of Claim with her Schedule F.  The court takes judicial notice of Ms. Jarrett's Schedule F, in which she listed a debt that appears to be one and the same as the one represented by Amended Proof of Claim #14-1, without dispute, using "Beneficial/household Finance" as the account creditor, and using the same account number shown in eCast's Proof of Claim # 14-1 (**********2368), and also showing $14,206 as the amount due.  *See* Exh. A to Docket Entry # 30.  The court concludes that the eCast Amended Proof of Claim and this line item in Ms. Jarrett's Schedule F reflect the same obligation.

In summary: (a) eCast complied with Bankruptcy Rule 3001 through its pre-hearing Amended Proofs of Claim and Affidavits and, thus, was permitted to rest on these items (such items having an independent evidentiary effect); (b) eCast prevails since neither Mr. Gulley nor Ms. Jarrett produced evidence to refute any aspect of the amended proofs of claim.

## CONCLUSION

Based on the foregoing, all amended proofs of claim of eCast

addressed herein are **ALLOWED** and the Debtors' objections thereto are **OVERRULED.**

IT IS SO ORDERED.

* * * * END OF MEMORANDUM OPINION AND ORDER * * * *